494 A.2d 761

Andrew Kenneth **MILLER**

v.

**MONTGOMERY COUNTY, Maryland, et al.**

**No. 1521, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 9, 1985.

Certiorari Denied Oct. 21, 1985.

204

Charles C. Parsons, Washington, D.C. (Reback & Parsons, Washington, D.C., on brief), for appellant.

Joseph M. Mott, Asst. County Atty., Rockville (Paul A. McGuckian, County Atty. and Clyde H. Sorrell, Sr. Asst. County Atty., Rockville, on brief), for Montgomery County.

Charles E. Wilson, Jr., Rockville (McCarthy, Wilson & Ethridge, Rockville, on brief), for appellee, Leslie.

Wade J. Gallagher, Rockville (Martell, Donnelly, Gallagher & Kastantin, Rockville, on brief), for appellee, Neel.

Argued before WEANT, GARRITY and BLOOM, JJ.

BLOOM, Judge.

In this action for personal injuries sustained by appellant, Andrew Kenneth Miller, in a motor vehicle collision, the Circuit Court for Montgomery County directed a verdict in favor of the appellees, Bruce T. Neel, James M. Leslie, Jr., and Montgomery County, Maryland. Appealing from the ensuing judgment against him, Mr. Miller contends:

I. The trial court erred in granting a directed verdict as to all defendants where evidence of negligence existed as to each.

II. The court erred in sustaining a demurrer to the plaintiff's allegation of spoilation [sic] of evidence because the count stated a separate cause of action for which relief could be granted.

Cross-appealing, Montgomery County asserts

III. The appellant's expert, Dr. Parsonson, was not competent to offer an opinion on causation regarding a purported defect of the MM3 device on September 19 or September 10, 1980, because he had no expertise in the repair and maintenance of electromechanical devices and because he relied on the opinions of another expert whose opinions were not in evidence.

IV. Assuming appellant's expert was competent to offer an opinion on causation, nonetheless the appellant failed to establish a sufficient factual basis for such an opinion.

We shall affirm the judgment as to appellee Neel but reverse as to appellees Leslie and Montgomery County. In explaining our reasons for doing so, we shall first dispose of the cross-appellant's issues and then discuss the appellant's issues in reverse order.

## FACTS

The collision which gave rise to this litigation occurred at approximately 8:15 p.m. on September 19, 1980, at the intersection of Briggs Chaney Road and Columbia Pike (U.S. Route 29) in Montgomery County. Miller was a passenger in an automobile driven by Neel, which was travelling east on Briggs Chaney Road. Confronted with a red light at the intersection of Briggs Chaney Road and Route 29, Neel brought his car to a stop. When the traffic signal light facing him turned to green, Neel proceeded into the intersection. The Neel automobile had traversed the southbound lanes of Route 29 and the median strip and was crossing the northbound lanes when it was hit broadside by appellee Leslie's northbound vehicle.

Route 29 is, for the most part, a four lane highway, with two northbound lanes separated from two southbound lanes by a median strip. As it approaches this intersection, however, it widens to eight lanes, providing right and left turn lanes in addition to the through lanes. Briggs Chaney Road has one eastbound lane and one westbound lane.

The signal lights governing northbound and southbound traffic on Route 29 and eastbound and westbound traffic on Briggs Chaney Road are suspended from wires over the intersecting lanes. Signal lights governing left turns from Route 29 into Briggs Chaney Road are mounted on poles in the median strip that separates the northbound from the southbound lanes of Route 29.

The accident was investigated by Maryland State Trooper Frederick Hartley. Appellee Leslie explained to Hartley that he was proceeding northbound on Route 29, came upon the intersection and proceeded through because he observed no traffic signal of any kind controlling northbound traffic on Route 29. He was unfamiliar with the area and thus unaware that there was a controlled intersection. He did not see Neel's car until he was almost upon it. An eye-witness, Wade Matthews, who was driving northbound on Route 29 behind the Leslie vehicle, confirmed Leslie's state-

ment that no traffic signal was lit to control the northbound through traffic on Route 29.

Trooper Hartley subsequently contacted Montgomery County's Traffic Signal Unit with respect to the apparent failure of the signal light. He arranged to meet with Robert Gerhart, a signal technician, at the intersection on September 23. Gerhart arrived first. After viewing the signal lamps themselves from all directions, Gerhart opened the cabinet that houses the electronic components which control the signal lamps. After visually inspecting the components and checking for loose wires or connections, Gerhart attached test lamps with alligator clips to certain components in the cabinet. By then Trooper Hartley had arrived on the scene.

Gerhart and Hartley continued to observe the traffic signal lights for several minutes before a malfunction occurred. A southbound car on Route 29 received a green arrow signal permitting it to turn left onto Briggs Chaney Road, with the signal lamp facing northbound traffic turning to red. After about ten seconds, however, the red light faded out, leaving no signal for northbound traffic for one complete cycle. The test lamps installed by Mr. Gerhart indicated that the failure was in a component known as an MM3, which controls the lights when the presence of a vehicle in the left turn lane triggers a change in the traffic signals to permit a left turn (minor movement) across the northbound lanes of Route 29. Having a spare part in his van, Gerhart replaced the MM3, sealed the defective one with tape along its seam, put a tag on it to indicate that it may have been the cause of an accident and took it to the Traffic Signal Unit's shop for safekeeping and eventual testing.

Trooper Hartley was appellant's first witness. He described his investigation at the scene on September 19 and his meeting with technician Gerhart four days later and testified that Gerhart told him on the 23rd that the malfunc-

tions of the light on the 19th and the 23rd were both caused by the faulty MM3.

Wade Matthews testified that he was travelling north on Route 29 about three or four car lengths behind Leslie's vehicle. Matthews noticed several cars stopped in the left turn lane and a red signal light mounted on a pole to the left of the left turn lane. He then noticed headlights coming from the left on Briggs Chaney Road. The impact occurred "a split second" after he saw the headlights. Matthews also testified that no signal light was lit for the northbound Route 29 traffic and that it was necessary for him to "lock up his brakes" in order to avoid colliding with the two vehicles already in the intersection.

Leslie testified that he was driving northbound on Route 29 at about 50 miles per hour. He saw no traffic light ahead of him, but when he was about 50 to 75 feet from the intersection he saw a red light (presumably the left turn signal) to his left. Immediately thereafter, he saw headlights coming from the left, and then the crash occurred. Leslie testified that he never applied his brakes. He stated that he was not familiar with the area and was unaware that he was approaching an intersection until he was practically in it. On cross-examination, Leslie conceded that he had never seen an intersection where there were traffic signals controlling only left turns without controlling through traffic.

Testimony was also received from several Montgomery County Traffic Signal Unit employees. Henry Knupple, Traffic Signal Unit supervisor, explained the county's system for keeping records of problems and service calls for each intersection. The log for the Briggs Chaney Road and Route 29 intersection was admitted into evidence. That log showed that the county had received a call from a Traffic Signal Unit employee, Michael Carr, on September 10, 1980,

reporting an "intermittent red" signal on Route 29.[1] An intermittent red was defined by Knupple as a serious and infrequent problem with a traffic signal, whereby the red signal malfunctions at unpredictable times.

In response to Carr's telephone call, technician Albert Ganz was dispatched to check out the intersection. Ganz watched the signals for about twenty minutes without observing any malfunction. He then checked the cabinet housing the electronic components controlling the traffic light.

Ganz testified that he examined some of the contacts and then put a test lamp on the output of one of the components, called the SR4, a main load switch, the output from which operates the red light. This test indicated that the SR4 and every other component through which current flows to reach the SR4 was working correctly. On cross-examination, he admitted, in effect, that the test lamp told him nothing that was not apparent from merely observing that the red light itself was working. In order for the red light to work, current must reach it; all of the components through which that current flows must perforce be functioning at the time if current is reaching the light.

Finding nothing specifically wrong with the components in the cabinet, Ganz decided to replace the SR4 as a "preventative maintenance measure" and not to alleviate the problem. Indeed, since he saw no problem, he said, he was not convinced that one existed. Ganz did aver, however, that he believed the SR4 component would be the most likely cause of an intermittent red.

Technician Gerhart, who checked the intersection signals on September 23, also testified as a witness for appellant. Gerhart stated that he met Trooper Hartley at the intersec-

---

1. Testimony established that the county received notice of malfunctioning traffic signals via telephone calls from concerned citizens, from 911 emergency phone calls, and from reports by other signal technicians. A space on the log sheet for each intersection pinpointed the source of the complaint.

tion. While observing the signals, Gerhart noticed that the light controlling Route 29 northbound traffic turned red and then disappeared after about 10 seconds. The test lamps Gerhart had placed on the components indicated that an MM3, or minor movement controller component, was the cause of the intermittent red. He resisted all attempts to extract from him an opinion that the MM3 had been the cause of the intermittent red reported on September 10 or the intermittent red which was allegedly a cause of the collision on September 19, and he denied telling Trooper Hartley that the faulty MM3 he replaced on September 23 was the cause of the malfunction in the signal light on September 19. Gerhart stated that the SR4 would be the most likely cause of an intermitent red with the MM3 being the next most likely cause. He also testified that an intermittent red was a very unusual occurrence.

Appellant's expert witness, Dr. Peter Parsonson, a specialist in traffic engineering, opined that because an intermittent red is a dangerous condition, the proper procedure for alleviating an intermittent red when the cause is unknown is to replace or "swap out" every component that could possibly be causing the problem. Parsonson believed, therefore, that Ganz acted improperly in failing to swap out the MM3 as well as the SR4. (That opinion was at variance with one earlier stated by Henry Knupple, who claimed that Ganz acted properly in replacing the SR4 and that it would have been wrong for Ganz to have replaced the MM3 that was apparently functioning properly with a spare one from his van because "MM3's are notorious for not wanting to work.") Parsonson also opined that Ganz's failure to swap out the MM3 on September 10 was a proximate cause of the intermittent red on September 19.

At the close of appellant's case, all of the appellees moved for a directed verdict. The trial judge granted all three motions but explicated his reasoning only as to Montgomery County. The judge believed that as to Montgomery County the case was controlled by the rule in *Langville v. Glen Burnie Lines*, 233 Md. 181, 195 A.2d 717 (1963), and *Stras-*

*burger v. Vogel,* 103 Md. 85, 63 A. 202 (1906), from which he derived the following:

The well established rule of evidence is that the burden mentioned above [burden of proof] is not met by proof adduced by the plaintiffs to the effect that defendant's negligence may have caused the injury or even that it probably did cause them if it also appears from the plaintiff's own evidence that the injuries may have resulted from some other cause for which the defendant is not responsible.

## EXPERT OPINION TESTIMONY OF DR. PARSONSON

The first issue raised by the cross-appeal concerns Dr. Parsonson's ability to render an opinion as to the cause of the signal malfunctions on September 10, September 19 and September 23. Specifically, Montgomery County contends that because Parsonson admitted he was not able to take apart or repair an MM3 and had to rely on technician Richard Brown to inspect the device he should not have been permitted to give the opinion that the MM3 was the cause of the dysfunctions. We disagree.

The general rule with respect to the admission of expert testimony was stated in *Wilson v. State,* 181 Md. 1, 6, 26 A.2d 770 (1942).

To qualify as an expert, a witness should have such special knowledge of the subject about which he is to testify that he can give the jury assistance and guidance in solving a problem for which their equipment of average knowledge is inadequate. It is sufficient if the court is satisfied that the expert has in some way gained such experience in the matter as to entitle his evidence to credit.

In the case *sub judice,* Dr. Parsonson testified that he had a Ph.D. in civil engineering with a specialty in traffic engineering, including signalization and highway design and construction. He taught courses at Georgia Tech in traffic signals, coordinated systems, and had been qualified as an

expert in traffic signalization in several judicial proceedings.

Parsonson did state, however, that he did not perform hands-on repair of signal components; rather, he left such work to an electronic technician. He explained that he had some knowledge of the circuitry involved in the components such as the SR4 and MM3 but that he would be unable to repair a broken component.

Based upon those facts, we find no error in the trial judge's decision to permit Parsonson to give an opinion as to the cause of the intermittent traffic light failures on the days in question. Parsonson's specialized knowledge and expertise in the field of traffic control signals were sufficient to justify a conclusion that he qualified as an expert in that area. *Wilson, supra.* As the Court of Appeals noted in *Radman v. Harold,* 279 Md. 167, 171, 367 A.2d 472 (1977), "[W]e perceive no reason why a person who has acquired sufficient knowledge in an area should be disqualified as [an expert] ... *merely* because he has never personally performed a particular procedure." (emphasis in original)

We believe *Radman* fully disposes of cross-appellant's assertion that Dr. Parsonson should not have been permitted to express an opinion on the dysfunctioning MM3 merely because he was unable to take apart or repair the component.

## PARSONSON'S OPINION AS TO CAUSATION

■ Having concluded, *supra,* that Dr. Parsonson was competent to offer an opinion on causation, we turn to Montgomery County's argument that Miller "failed to establish a sufficient factual basis for such an opinion." This contention is utterly without merit.

Before Dr. Parsonson testified, evidence had already been adduced that three incidents of intermittent failures of the red traffic signal controlling northbound traffic on Route 29 at the intersection of Briggs Chaney Road had been noted

in less than two weeks. Several witnesses had testified that such failures are rare occurrences, and one witness had stated that "MM3's are notorious for not wanting to work." The investigating officer, Trooper Hartley, had testified that technician Gerhart told him on September 23 that the traffic light malfunction on September 19 was caused by the same defective MM3 Gerhart replaced on the 23rd (although Gerhart later denied having made such a statement to Hartley). Technician Gerhart had testified that the intermittent red he observed on September 23 was definitely caused by a faulty MM3.

All of that evidence supported the opinion of Dr. Parsonson that technician Ganz had negligently failed to use proper procedure to correct the cause of the intermittent red by failing to swap out all components that could possibly have caused the malfunction. The testimony of the other witnesses, coupled with Parsonson's opinion that Ganz was negligent, constituted a sufficient factual basis for his secondary opinion that Ganz's negligence on the 10th was the proximate cause of the accident on the 19th. Accordingly, we find no error in the trial judge's decision to admit this testimony.

## "SPOLIATION"

In an amended declaration filed by appellant Miller in 1984, the second count purported to allege a cause of action for "Fraudulent Destruction of Evidence." The declaration alleged that the MM3 removed by Gerhart on September 23, 1980, had been in the exclusive possession of Montgomery County until November 10, 1983, when it was made available to Dr. Parsonson. The count further alleged that Montgomery County had "entered the interior of the MM–3 component and altered the mechanisms of the interior of the component from the condition in which it existed at the time of its removal on September 23, 1980."

Montgomery County demurred, arguing that there was no cause of action for "destruction of evidence," and this demurrer was sustained without leave to amend.

At the trial, Dr. Parsonson testified that the MM3 was in perfect working order when he tested it in 1983 and that the interior of the component was then "pristine." He opined that the unit should not have been in such condition after being used so the one he saw could not possibly have been the same MM3 that Mr. Gerhart had replaced on September 23.

At this juncture, appellant maintains that the court erred in sustaining Montgomery County's demurrer without leave to amend. We believe the ruling was correct.

■ As used in the context of this case, "spoliation" is the destruction, mutilation or alteration of evidence by a party to an action.[2] We are not called upon to decide whether intentional or negligent destruction of evidence by a stranger to the action would give rise to a separate cause of action in tort against him; here the alleged spoliation was by a party to the cause and as against such party there is no separate cause of action because there is no basis or need for one.

■ The destruction or alteration of evidence by a party gives rise to inferences or presumptions unfavorable to the spoliator, the nature of the inference being dependent upon the intent or motivation of the party. Unexplained and intentional destruction of evidence by a litigant gives rise to an inference that the evidence would have been unfavorable to his cause, but would not in itself amount to substantive proof of a fact essential to his opponent's cause. *See Maszczenski v. Myers*, 212 Md. 346, 129 A.2d 109 (1956). The maxim, *Omnia praesumuntur contra spoliatem*, "all things are presumed against the spoliator," rests upon a logical proposition that one would ordinarily not destroy evidence favorable to himself. In this case, if the jury were to find that Montgomery County had, in fact, altered the MM3 but without fraudulent intent, it could infer therefrom

---

2. "Spoliation" is a term also applied to the unauthorized alteration of a document by a stranger to it.

that the MM3 was defective. That inference would have little significance in view of the fact that the MM3 is known to have malfunctioned on September 23, 1980. If, however, the jury were to find that Montgomery County had altered the MM3 with fraudulent intent to conceal the nature of the defect, such conduct may be taken as an indication of consciousness of the weakness of the county's case and a belief that its defense would not prevail without the aid of such improper tactics. Together with other evidence, that could lead to a further inference that Montgomery County tampered with the evidence because it was guilty of the wrong of which it was accused. *See, e.g., Meyer v. McDonnell,* 40 Md.App. 524, 392 A.2d 1129 (1978), in which the "tampering" was in the form of intimidating opposing expert witnesses.

In either event, the remedy for the alleged spoliation would be appropriate jury instructions as to permissible inferences, not a separate and collateral action. The court did not err in sustaining the demurrer to the second count of appellant's amended declaration.

### DIRECTED VERDICT

The final argument we must address in this appeal is the trial judge's decision to grant a directed verdict in favor of the three appellees—Bruce Neel, James Leslie, Jr., and Montgomery County. We shall discuss the decisions as to each appellee separately.

### *Neel*

■ The uncontroverted evidence established that appellee Neel was the driver of the vehicle in which appellant was a passenger at the time of the accident. Neel asserted that he was travelling eastbound on Briggs Chaney Road and was confronted with a red light at the intersection of Briggs Chaney and Route 29. Neel entered the intersection only after the light had turned green, and then appellee Leslie's vehicle collided with his vehicle. Based upon this evidence, we do not believe that there existed a rational

ground upon which a verdict against Neel could have been based. *Lusby v. First National Bank*, 263 Md. 492, 283 A.2d 570 (1971).

When the traffic light controlling eastbound traffic on Briggs Chaney Road turned green in front of Mr. Neel, he had every reason to believe that the signals controlling north and southbound traffic on Route 29 would be red to allow east-west traffic on Briggs Chaney Road to proceed. This rule was succinctly stated in *Baltimore Transit Company v. Presberry*, 233 Md. 303, 306, 196 A.2d 717 (1964), as follows: "[I]t is equally clear that, if she [a driver involved in the collision] had a green light, she was not obliged to anticipate that another vehicle would enter unlawfully against a red light." *See also Thompson v. Terry*, 245 Md. 480, 226 A.2d 540 (1967), where the Court of Appeals stated that "[t]here was also no duty on Terry's part to anticipate that Conway, the unfavored driver, would not obey the traffic signal." *Thompson*, at 487, 226 A.2d 540.

Since Neel had a right to assume that no vehicle would enter the intersection from Route 29 while he had the green light, we find no error in the decision to grant a directed verdict in his favor.

### Leslie

Evidence was presented at trial that appellee Leslie approached the Briggs Chaney Road intersection while travelling northbound on Route 29 at a speed of approximately 50 miles per hour. Leslie testified that he was unfamiliar with the intersection and did not realize he was entering an intersection until a split second before the accident.

Leslie also testified that he saw a red light go on "off to his left" about 50 or 75 feet before he collided with Neel's vehicle. Wade Matthews, who was travelling three or four car lengths behind Leslie, stated that three or four cars were stopped in the lane controlled by the left turn signal. The evidence thus established that, although the light con-

trolling northbound through traffic on Route 29 was not working, the left turn lane was governed by a signal.

■ We believe the determination of whether appellee Leslie could or should have seen that the intersection he was about to enter was controlled by a signal was a question to be decided by a jury. "[A] case should not be withdrawn from the jury, unless, in viewing the evidence and all inferences which may be reasonably drawn therefrom, in a light most favorable to the plaintiff, there is no legally sufficient evidence of negligence for the jury to consider." *Home Insurance Co. v. Metropolitan Fuels Co.*, 252 Md. 407, 411, 250 A.2d 535 (1969). Sufficient evidence was presented from which it could be inferred that Leslie should have proceeded towards the intersection with more care than he did.

Appellee Leslie relies on the case of *Hickory Transfer Co. v. Nezbed*, 202 Md. 253, 96 A.2d 241 (1953). In *Hickory*, Floyd Shank was driving a truck for Hickory Transfer east on Orleans Street in Baltimore. The traffic light controlling eastbound traffic on Orleans Street at its intersection with Milton Avenue was out of order and was entirely dark. Shank proceeded into the intersection at the same time as a Mr. Baugher, who was heading south on Milton and who had a green light. The two vehicles, not surprisingly, collided in the intersection.

The Court of Appeals determined that the trial court erred in failing to grant a directed verdict in favor of Shank and Hickory. Chief Judge Sobeloff, speaking for the Court, stated:

It seems to us plain enough that the collision at the intersection occurred because Shank innocently thought himself entitled to the right of way, and in this he was misled by the appearances created by the defective signal device. We perceive no evidence of negligence on his part to which the collision between the two vehicles may fairly be attributed.

Decisions of this Court have settled the law of Maryland, that while a driver on a boulevard is not relieved of the duty of exercising care, yet in determining what is due care his right to assume that he has the right of way is an important factor.... Nor is it evidence of negligence that he failed to observe an unlighted signal and to anticipate the possibility that the same signal which is dark as he faces it may at the same time be inviting traffic on the side street to cross in his path. Many traffic signals operate on part-time, and their being unlighted constitutes no warning ordinarily of such danger as existed here.

*Hickory,* at 261, 96 A.2d 241 (citations omitted).

We believe that the facts in the case at bar are distinguishable from those in *Hickory.* In *Hickory,* a clearly visible traffic light which was not functioning confronted the truck driver. He had a right to assume the signal for the intersection was not working and to proceed into the intersection.

In the case *sub judice,* the jury might well find from the evidence that Leslie saw or should have seen the left turn signal as he approached the intersection and should have realized that an intersection with a left turn light would normally have a traffic light governing through traffic. The absence of a visible traffic light for through traffic, in turn, should have been taken as a warning that there might be a malfunctioning light, negating any right to assume he had the right of way and requiring Leslie to proceed more cautiously than he did.

Since there was sufficient evidence from which the jury could have found that Leslie was negligent in entering the intersection as he did, it was error to grant a directed verdict in his favor.

### Montgomery County

We come now to the decision to grant a directed verdict in favor of Montgomery County. The trial judge granted the

directed verdict because he believed the case was governed by *Langville v. Glen Burnie Lines,* 233 Md. 181, 195 A.2d 717 (1963), and *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202 (1906), having concluded that appellant had established two mutually exclusive causes for the light failure on the day of the accident—the SR4 and the MM3. We disagree.

In both *Strasburger* and *Langville,* the issue involved was whether the accident occurred due to the negligence of the defendant or a superceding intervening cause. If the accident was due to an intervening cause, of course, the defendant would not be held responsible. In *Langville,* the plaintiff's evidence established only that a traffic accident had occurred either because the defendant negligently failed to apply his brakes or because of a sudden, unforeseen brake failure. The judge below decided, and the Court of Appeals held, that in such a situation plaintiff had failed to meet his burden of proof because

> when the plaintiff himself shows that the injury complained of must have resulted *either* from the negligence of the defendant *or* from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury.

*Langville,* 233 Md. at 185, 195 A.2d 717, quoting from *Strasburger, supra,* 103 Md. at 91, 63 A. 202 (emphasis in original).

In *Strasburger,* the plaintiff, who was injured by a brick falling from a chimney, presented evidence that the brick may have been dislodged by third persons who were on the roof of the house without the knowledge or consent of the owner or occupant, thereby negating any presumption of negligent failure to keep the chimney in repair. Thus, the plaintiff himself proved that his injury resulted either from the defendant's negligence or from an independent cause.

■ In the case *sub judice,* the issue involved is *not* whether an accident which occurred resulted from either

cause A or cause B, with the county being liable only if the accident was caused by A. Rather, the evidence clearly established that the collision resulted from the failure of a traffic light. At issue was (1) whether Montgomery County was negligent in its maintenance of the light and (2) if so, whether its negligence was a proximate cause of the accident.

Concerning the issue of negligence, the evidence established that Mark Carr, a traffic unit employee, called in to report an intermittent malfunctioning of a red light on Route 29 at its intersection with Briggs Chaney Road. Technician Ganz responded to the call but, although he had access to the records indicating the source of the call, failed to check with Carr to find out exactly what Carr had seen. Rather, Ganz went to the intersection without knowing if the intermittent red was observed on the northbound or southbound red.

Once he arrived at the intersection, Ganz could not find the cause of the outage and merely replaced one SR4 component because he believed an SR4 failure to be a likely cause of the purported signal defect. There was expert opinion evidence that Ganz was negligent in simply replacing the SR4; that since Ganz could not locate the cause of intermittent outage of the red light, he should have "swapped out" every one of the electronic components that could have been faulty.

The next question is whether Ganz's negligent decision to replace only one component was a proximate cause of the accident on September 19. Ganz's negligence would constitute a proximate cause of the collision *only* if a defective component he failed to replace on September 10 caused the light to malfunction again on September 19, the date of the accident. Was there competent evidence presented to support a finding that the MM3 found to be defective on September 23 was the culprit on the 10th and the 19th? We believe so.

Several witnesses testified that a traffic light malfunction in the nature of an intermittent red is a rare occurrence, and one of them indicated that MM3's frequently malfunction. From those facts it is far more reasonable to infer that the one MM3 that is known to have failed on September 23 was the cause of the two prior malfunctions that occurred on September 10 and 19 than to believe that each failure was caused by a different component. That inference, in turn, supports Dr. Parsonson's expert opinion that Ganz's negligent failure to "swap out" or replace the MM3 as well as the SR4 on September 10 was a proximate cause of the traffic light malfunction and resulting collision on September 19.

We hold, therefore, that there was sufficient evidence to go to the jury on the issues of negligence on the part of Ganz's employer, Montgomery County, and the causal relationship between that negligence and the collision which resulted in appellant's injuries. The court erred in granting Montgomery County's motion for directed verdict.

JUDGMENT AFFIRMED AS TO APPELLEE NEEL.

JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL AS TO APPELLEES LESLIE AND MONTGOMERY COUNTY, MARYLAND.

COSTS TO BE PAID ⅙ BY APPELLANT, ⅙ BY APPELLEE JAMES M. LESLIE, JR., AND ⅔ BY APPELLEE/CROSS-APPELLANT MONTGOMERY COUNTY, MARYLAND.