536 A.2d 1230

**Luke R. REILLY**

v.

**George C. NEWMAN, II, et al.**

**No. 875, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Feb. 11, 1988.

Certiorari Granted June 2, 1988.

282

Cynthia E. Young, Annapolis (Daniel M. Zerivitz, Balti-more, on the brief), for appellant.

Conrad W. Varner (Mark D. Thomas and Strite, Schildt & Varner, on the brief), Hagerstown, for appellees.

Argued before WEANT, ROSALYN B. BELL and KARWACKI, JJ.

KARWACKI, Judge.

Luke R. Reilly appeals from a judgment awarding George C. Newman II, M.D., and his professional association, Newman, Wagshal, Wooster & Kass, P.A., appellees, costs and their expenses for reasonable attorney's fees pursuant to Rule 1–341. That judgment was rendered by the Circuit Court for Washington County (Corderman, J.) after the court dismissed Reilly's action to nullify an award of no liability rendered by the chairperson of the panel appointed pursuant to Md.Code (1984 Repl.Vol., 1987 Cum.Supp.) §§ 3–2A–01 through 09 of the Courts and Judicial Proceedings Article to arbitrate his claim of medical malpractice against the appellees.

The events which gave rise to appellant's malpractice claim began on Sunday, August 7, 1983. At 8:30 that morning appellant placed a telephone call to the office of Newman, Wagshal, Wooster & Kass, P.A., in an attempt to speak with his physician, Dr. Wooster. Because Dr. Wooster was away for the weekend, appellee Newman returned appellant's call at 9:30 a.m. From that conversation and in responding to repeated telephone calls from the appellant which followed, Dr. Newman concluded that appellant was experiencing a severe emotional crisis and that he posed a genuine threat to himself and others. A conversation with appellant's wife confirmed Dr. Newman's conclusions. Dr. Newman then telephoned appellant's treating psychiatrist, Dr. Ira Fetterhoff, who had examined appellant for three hours on the previous day. Appellee also spoke with a representative of appellant's employer, the Maryland State Police. From these conversations, appellee Newman learned that appellant was suffering from a mental illness, a major depressive disorder, and that he was potentially suicidal.

Based upon this information, Dr. Newman arranged for appellant's admission to Taylor Manor Hospital, a mental health facility. After Dr. Newman and Dr. Fetterhoff

signed the requisite certificates for involuntary admission,[1] appellant's co-workers at the Maryland State Police took appellant into custody and transported him to Washington County General Hospital. Dr. Newman did not speak with appellant at the county hospital; instead, appellant was detained in the parking lot until the State Troopers picked up the commitment paperwork. Appellant was subsequently admitted to Taylor Manor Hospital where his treating physicians agreed that he was suffering from a serious emotional disorder, and that he posed a threat to himself and others. Appellant was released from Taylor Manor Hospital following his commitment hearing on August 11, 1983.

On May 9, 1985, appellant filed a claim in the Health Claims Arbitration Office (HCAO) against appellees, alleging that Dr. Newman failed to conform to the standards contained in Maryland Code (1982), § 10–613 through § 10–624 of the Health–General Article.[2] Specifically, ap-

---

1. Maryland Code (1982), § 10–615(6) of the Health–General Article provides:
 Each application for involuntary admission to a facility or Veterans' Administration hospital under Part III of this subtitle shall:

 . . . . .

 (6) Be accompanied by the certificates of:
 (i) 1 physician and 1 psychologist; or
 (ii) 2 physicians

2. § 10–616 of the Health–General Article states:
 (a) *Form.*—(1) A certificate for involuntary admission of an individual under Part III of this subtitle shall:
 (i) Be based on the personal examination of the physician or psychologist who signs the certificate; and
 (ii) Be in the form that the Secretary adopts, by rule or regulation.
 (2) The rules and regulations shall require the form to include:
 (i) A diagnosis of a mental disorder of the individual;
 (ii) An opinion that the individual needs inpatient care or treatment; and
 (iii) An opinion that admission to a facility or Veterans' Administration hospital is needed for the protection of the individual or another.
 (b) *Time limitations.*—A certificate may not be used for admission if the examination on which the certificate is made was done:

pellant alleged that Dr. Newman negligently executed the certificate for involuntary admission without first conducting a personal examination of appellant. Appellant sought damages for his loss of liberty from August 7, 1983 to August 11, 1983, and for the personal humiliation which he suffered as a proximate result of the alleged negligence of Dr. Newman. Daniel M. Zerivitz, Esq., acted as appellant's attorney throughout the HCAO proceedings.

Prior to a hearing by the HCAO panel on the claim, appellees filed a motion for summary judgment with the chairperson of the panel. They argued *inter alia* that the appellant was not prepared to offer any testimony of a medical expert that, during the period of his involuntary commitment to Taylor Manor Hospital, appellant was not suffering from a mental disorder which rendered him a danger to himself or others. The chairperson granted the motion on October 29, 1986, and advised the director of HCAO. The director's notice to the parties of an award of no liability was received by appellant's counsel on November 5, 1986.

Appellant, by his attorney, Mr. Zerivitz, then filed a timely notice of action to nullify that award in the Circuit Court for Washington County pursuant to Md.Code, *supra,* § 3–2A–06 of the Courts and Judicial Proceedings Article and Rule BY 2(a). Appellees responded with a "Motion to Strike or, in the Alternative, to Dismiss Action to Nullify Award," attaching as exhibits excerpts from the record before the HCAO chairperson at the time appellees' motion

---

(1) More than 1 week before the certificate is signed; or

(2) More than 30 days before the facility or the Veterans' Administration hospital receives the application for admission.

(c) *Limitations on practitioners.*—A certificate may not be used for an admission if the physician or psychologist who signed the certificate:

(1) Has a financial interest, through ownership or compensation, in a proprietary facility and admission to that proprietary facility is sought for the individual whose status is being certified; or

(2) Is related, by blood or marriage, to the individual or to the applicant.

for summary judgment was granted. After the appellant filed a "declaration" setting forth his malpractice claim as required by Rule BY 4, appellees moved to dismiss that complaint pursuant to Rule 2–322. In both of their motions appellees pointed out that the record before the HCAO chairperson disclosed that all of the physicians who examined appellant immediately prior to and during his involuntary admission at Taylor Manor Hospital agreed that appellant was then suffering from a mental disorder which required his inpatient treatment at a mental health facility for his protection and the protection of others. Appellees then observed that appellant did not offer any contrary expert opinion in responding to appellees' motion for summary judgment before the HCAO chairperson. Consequently, appellees sought dismissal of the action because there was no competent evidence that appellant was improperly confined to a mental health facility from August 7, 1983 through August 11, 1983. In replying to these motions and at the hearing conducted thereon, appellant admitted that he was unable to offer any expert testimony that he did not require inpatient treatment for a mental disorder during the period in question. Instead, he argued that expert opinion was not required to establish causation between Dr. Newman's negligence in certifying to his need for inpatient treatment and the injury suffered as a result of his confinement at Taylor Manor Hospital.

After hearing argument on February 3, 1987, the court granted both motions and entered judgment in favor of the appellees. Appellant did not appeal that judgment.

In a motion filed pursuant to Rule 1–341 on March 5, 1987, appellees asked the court to require the appellant and/or his attorney to pay appellees' costs and reasonable attorney's fees incurred in defending the proceedings before the HCAO and the action to nullify the HCAO award filed in court. Mr. Zerivitz, on behalf of the appellant, replied to that motion but did not request a hearing thereon

pursuant to Rule 2–311(f). No opposition to the motion was filed on behalf of Mr. Zerivitz.[3]

In a memorandum opinion dated April 1, 1987 and filed the next day, the court, without holding a hearing on appellees' motion, concluded that both the appellant and his attorney had maintained the case from its inception before the HCAO without substantial justification. The court, based upon an affidavit supporting appellees' motion, found that appellees had incurred reasonable attorney's fees and costs in defending those proceedings and that the appellant and Mr. Zerivitz should each bear one-half of those costs. Accordingly, the order which accompanied the court's opinion provided "that a judgment in favor of the defendants be entered against Luke R. Reilly in the amount of $10,583.53, and against Daniel M. Zerivitz in the amount of $10,583.52."

Appellant has presented the following questions for review by this Court:

 I. Did the circuit court err in dismissing appellant's health claims arbitration appeal and assessing costs and attorney's fees against appellant and appellant's trial counsel?

---

**3.** We perceive an obvious conflict of interest between appellant and his attorney in defending the claim brought against them on the ground that either or both of them maintained a civil action in bad faith or without substantial justification. We remind the bar of Rule 1.7(b) and (c) of the Maryland Lawyers' Rules of Professional Conduct:

 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

 (1) the lawyer reasonably believes the representation will not be adversely affected; and

 (2) the client consents after consultation.

 (c) The consultation required by paragraphs (a) and (b) shall include explanation of the implications of the common representation and any limitations resulting from the lawyer's responsibilities to another, or from the lawyer's own interests, as well as the advantages and risks involved.

*See also Watson v. Watson,* 73 Md.App. 483, 496 fn. 4, 534 A.2d 1365 (1988).

II. Did the circuit court err in assessing costs and attorney's fees against appellant and appellant's counsel for the time spent by appellees' counsel on appellant's claim before the Health Claims Arbitration Office?

## I.

### Judgment Entered Against Appellant's Attorney

Despite the language in which the initial question is framed, appellant conceded in his reply brief and at oral argument that the court's February 3, 1987, judgment dismissing his action to nullify the HCAO award is not a proper subject for review by this Court because he did not appeal that judgment in favor of appellees within 30 days of its entry. Rule 1012(a). That judgment disposed of all claims then pending between the parties and was final. *Cf.* Rules 2–601 and 2–602. Appellant asks us, however, to review the judgment entered against his attorney as well as the judgment entered against him. This we decline to do.

The appeal noted on April 22, 1987, stated:

### ORDER FOR APPEAL

Please enter an appeal on behalf of the Plaintiff to the Court of Special Appeals from the Judgment, in the above captioned matter, in favor of the Defendants, George C. Newman, II M.D., et al., dated April 1, 1987 and entered on April 2, 1987.

The "order for appeal" was signed by Daniel M. Zerivitz, "attorney for plaintiff," but made no mention of an appeal from the separate judgment entered against Daniel M. Zerivitz. A judgment or decree from which no appeal has been taken may not be reversed for the benefit of one who did not appeal even though in regard to him the judgment or decree is both erroneous and injurious. *Taylor v. Wah-*

*by,* 271 Md. 101, 110, 314 A.2d 100 (1974); *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 329–30, 129 A.2d 93 (1957).[4]

## Judgment Entered Against Appellant

 The court concluded that appellant had maintained his claim against the appellees without substantial justification. We hold that the trial judge was not clearly erroneous in concluding that the action to nullify the award was maintained in the circuit court without substantial justification and that he did not abuse his discretion in imposing the sanction authorized by Rule 1–341. *Century I Condo v. Plaza Condo Joint Venture,* 64 Md.App. 107, 117, 494 A.2d 713 (1985); *Dent v. Simmons,* 61 Md.App. 122, 127, 485 A.2d 270 (1985).

The Health Care Malpractice Claims Act requires that all claims against a health care provider for medical injury in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought must be submitted to mandatory arbitration prior to the institution of traditional court action. Maryland Code, *supra,* § 3–2A–02(a) of the Courts and Judicial Proceedings Article. *Wyndham v. Haines,* 305 Md. 269, 273, 503 A.2d 719 (1986). Appellant's claim against appellees involved a medical injury as defined in the Act. Maryland Code, *supra,* § 3–2A–01(f) of the Courts and Judicial Proceedings Article; *Long v. Rothbaum,* 68 Md.App. 569, 578, 514 A.2d 1223 (1986). His claim was thus subject to arbitration as a condition precedent to judicial relief. *Id.*

The general principles which ordinarily govern in negligence cases also apply in medical malpractice cases. *Riffey v. Tonder,* 36 Md.App. 633, 650, 375 A.2d 1138, *cert. denied,* 281 Md. 745 (1977). To establish a cause of action in negligence, a plaintiff must prove the existence of a duty

---

**4.** After oral argument of this appeal on January 18, 1988, appellant filed a "Motion to Correct Caption" asking that the caption of this case be amended "to reflect the participation of Daniel M. Zerivitz as a party appellant to this appeal." For the reasons stated above that motion is denied.

owed by a defendant to him (or to a class of which he is a member), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages. *Cramer v. Housing Opportunities Comm'n of Montgomery County,* 304 Md. 705, 712, 501 A.2d 35 (1985); *Scott v. Watson,* 278 Md. 160, 165, 359 A.2d 548 (1976); *Peroti v. Williams,* 258 Md. 663, 669 (1970).

Appellant brought his action in the court without any reasonable possibility of establishing a *prima facie* medical malpractice case because he knew at that time that he was unable to prove that he was in any way actionably damaged by his confinement at the Taylor Manor Hospital. Whether he was suffering from a mental disorder which required his admission to a mental health facility for his protection and the protection of others was a medical question and reliance on lay opinion alone to prove causation was not justified. *Johns Hopkins Hospital v. Genda,* 255 Md. 616, 622, 258 A.2d 595 (1969); *Jewel Tea Co. v. Blamble,* 227 Md. 1, 7–8, 174 A.2d 764 (1961); *Fink v. Steele,* 166 Md. 354, 361, 171 A. 49 (1934). In a similar case in which a plaintiff seeking damages alleged that his physicians were negligent because they signed a certificate calling for his confinement in a mental institution without first conducting a personal examination, the Court of Appeals wrote:

> [T]he action, if it lies, can be resorted to only for redress of injury from the physicians' having contributed to bring about confinement of one who should not have been confined. If the patient was in fact insane, and in need of confinement, there would be no actionable injury from wrongful procedure in confining him.

*Miller v. West,* 165 Md. 245, 248, 167 A. 696 (1933).

Appellant was aware of the evidence offered in the HCAO proceeding that all of the physicians who examined him immediately prior to his admission and during his confinement were of the opinion that his mental condition on August 7, 1983, required his involuntary admission to a mental health facility pursuant to Md.Code, *supra,* §§ 10–

613 through 619 of the Health–General Article. Without expert testimony contradicting those opinions, his action was devoid of merit. *Century I Condo v. Plaza Condo Joint Venture, supra,* 64 Md.App. at 119, 494 A.2d 793; *Blanton v. Equitable Bank, National Association,* 61 Md. App. 158, 165–66, 485 A.2d 694 (1985).

## II.

### Appellees' Attorney's Fees and Costs in HCAO

In granting appellees' motion pursuant to Rule 1–341, the court ordered appellant to pay one-half of the attorney's fees and costs incurred by the appellees in the proceedings before the HCAO. We agree with the appellant that the court erred in doing so.

While appellees' motion for summary judgment was pending before the HCAO chairperson, an order scheduling a prehearing conference preliminary to a hearing before the HCAO panel was issued by the chairperson. That order required the parties to furnish the HCAO chairperson in writing a prehearing submission prior to the scheduled prehearing conference. The prehearing submission was to include a statement of the issues to be decided. In response to that order, appellees listed in their prehearing submission as one of the issues to be decided whether appellant had instituted and maintained the HCAO proceedings in bad faith and without substantial justification.[5] Md.Code, *supra,* § 3–2A–07(a) of the Courts and Judicial Proceedings Article permits the HCAO *panel* to order any party who maintains a proceeding before it in bad faith or without substantial justification or the attorney advising that conduct to pay the adverse party's attorney's fees and ex-

---

5. Appellant has moved to strike appellees' prehearing submission from the record of this appeal because the prehearing submission was not presented to the trial court below. Our disposition of this appeal renders a decision concerning appellant's motion unnecessary.

penses.[6] That statute was enacted by Chapter 640 of the Laws of 1986 and was made applicable to "all cases pending in the [HCAO] as of July 1, 1986."

Because the HCAO *panel* in the instant case never heard the proceeding, since it was resolved by the HCAO chairperson's summary judgment, the authority of the HCAO panel to impose the sanction was never invoked in this case. Consequently, it was not part of the award which was judicially reviewed by the court.

Furthermore, the power to sanction vested in the court pursuant to Rule 1–341 is limited to civil actions. Action is defined as "collectively all the steps by which a party seeks to enforce any right *in a court* . . ." Rule 1–202(a) (emphasis supplied). That power does not extend to the HCAO proceedings which are mandated as a condition precedent to a malpractice claimant's invoking the jurisdiction of a circuit court for redress of his or her claim. As we observed in *Osheroff v. Chestnut Lodge, Inc.*, 62 Md.App. 519, 525, 490 A.2d 720, *cert. denied*, 304 Md. 163, 497 A.2d 1163 (1985):

> Although judicial review of the HCAO actions might be regarded as a continuation of the arbitration proceeding, it is not. Rather, it is a new, separate, and distinct proceeding. It is litigation.

The record reflects that the major portion of the attorney's fees and costs incurred by the appellees was incurred in the course of the HCAO proceedings. Therefore, we shall remand the case so that the court may modify the

---

**6.** § 3–2A–07(a) of the Courts and Judicial Proceedings Article provides:

> (a) *Action maintained in bad faith.*—If the arbitration panel finds that the conduct of any party in maintaining or defending any action is in bad faith or without substantial justification, the panel may require the offending party, the attorney advising the conduct, or both, to pay to the adverse party the costs of the proceeding and reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it. A determination made under the subsection shall become part of the panel award and subject to judicial review.

judgment in favor of the appellees, limiting its Rule 1–341 sanction to the fees and costs incurred after the appellant filed his action in court to nullify the HCAO award.

JUDGMENT VACATED;

CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR ENTRY OF JUDGMENT IN FAVOR OF APPELLEES IN ACCORDANCE WITH THIS OPINION;

COSTS TO BE DIVIDED; ONE–THIRD TO BE PAID BY APPELLANT; TWO–THIRDS TO BE PAID BY APPELLEES.