150 N.J. Super. 172 (1977)
375 A.2d 279
JOSEPH SACAWA, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
BRAHAM D. POLIKOFF, D.D.S., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1977.
Decided May 23, 1977.
*173 Before Judges CARTON, KOLE and LARNER.
Mr. William O. Barnes, Jr. argued the cause for plaintiff-appellant and cross-respondent (Mr. Louis Ruprecht on the brief).
Mr. Marc L. Dembling argued the cause for defendant-respondent and cross-appellant (Messrs. Lieb, Teich & Berlin, attorneys).
PER CURIAM.
Plaintiff Sacawa brought this malpractice action against defendant Polikoff, a licensed dentist, alleging *174 that defendant was negligent in failing to take proper measures to prevent trismus (lockjaw) from developing after he had performed dental work on plaintiff. After a four-day trial the jury returned a 10-2 verdict finding no cause of action in favor of defendant dentist. Thereafter the trial judge granted plaintiff's motion for a new trial. During the second trial the judge ruled certain expert testimony offered by plaintiff inadmissible. Thereafter, upon stipulated facts, the judge entered a judgment for defendant. Plaintiff appealed the latter judgment of the second trial judge, while defendant appealed the first trial judge's grant of a new trial.
We consider, first, defendant's cross-appeal from the order granting plaintiff a new trial. The evidence presented at the first trial tended to show, among other things, the following: Plaintiff went to defendant's dental office for an examination on October 30, 1970. As a result of the findings of this examination, plaintiff returned to defendant on December 11 for repair work on an extensively decayed molar. During the course of this appointment defendant unsuccessfully attempted to insert artificial pins into the tooth as supports for a filling. The resulting failure of this technique left plaintiff with only part of a filling in the molar.
Plaintiff's expert witness testified at the first trial that one of the pins inserted into the molar by defendant to support the filling migrated into the nerve cavity or pulp chamber of the tooth, causing infection and the lockjaw condition. Plaintiff's expert identified the failure to take X-rays of the molar after inserting the pins as defendant's most glaring deviation from accepted standards of dental practice.
Defendant himself testified that he had in fact taken X-rays of the molar on December 11 after inserting the pins into plaintiff's molar in order to ascertain whether they had "perforated" from the tooth structure into the bone, and he produced the purported photographs for the *175 first time at trial. Neither plaintiff nor his attorney knew of the existence of these X-rays prior to defendant's testimony, and counsel extensively cross-examined defendant about his failure to mention in his answers to plaintiff's interrogatories or in his deposition testimony that he had taken the office X-rays. Plaintiff's counsel then made a motion to strike all testimony regarding the X-rays. Before the trial judge could rule on the motion, counsel for both parties reached an agreement in which plaintiff consented to withdraw his motion to strike, and defendant agreed that no further questions about the X-rays could be asked of any witness. This settlement did permit counsel to comment on the X-rays in summation.
Defendant's expert testified that a dentist could not discern from an X-ray whether any of the pins had migrated into the cavity. The expert stated that, in his opinion, defendant had no reason to suspect that Sacawa was developing the lockjaw condition until he observed plaintiff's swollen jaw on December 21. According to this expert, defendant complied with accepted dental practice by referring plaintiff to an oral surgeon, and the witness concluded that at no time did defendant deviate from accepted standards of dental practice.
During his summation plaintiff's counsel discussed the X-rays and their belated presentation, and then stated that "that X-ray was talked about by Dr. Polikoff. You know who asked him about the X-ray, I did. It wasn't asked about anything on direct and he has yet to be asked, does the little X-ray, the one he says is of this man, does that show a pin in the pulp?" Defendant's counsel immediately objected to plaintiff's attorney's suggestion that further testimony on the X-ray was not introduced due to defendant's unwillingness. The trial judge agreed with defendant and informed the jury that "as a result of objections * * * made after the conclusion of Dr. Polikoff's testimony, it was agreed by counsel and directed by the Court that no *176 other witness [would] be permitted to be asked any questions in regard to that X-ray."
After the jury returned a verdict in favor of defendant, plaintiff moved for a new trial, primarily on the basis that defendant had failed to reveal the existence of the purported December 11 X-rays prior to his testimony at trial. In granting plaintiff's motion the trial judge noted that defendant's failure to reveal the disputed X-ray before trial had created a "touchy situation," particularly because plaintiff's expert, not knowing of the X-ray, had testified that defendant breached the standard of dental care by failing to take an X-ray after the pin insertion, and because the expert had had no opportunity to examine the purported X-ray. Characterizing the question raised by defendant's objection to plaintiff's summation comments on the X-ray as "difficult," the trial judge concluded that he had erroneously foreclosed plaintiff's counsel from commenting on defendant's direct testimony concerning the X-ray. Viewing the entire case as a close one, the judge found that this limitation on plaintiff's summation had had a significant effect on the jury, and concluded that plaintiff was unfairly prejudiced by the ruling and the accompanying instruction to the jury.
We conclude that the trial judge was justified in granting plaintiff a new trial. Defendant's failure to reveal the X-ray to plaintiff prior to trial, defendant's surprise production of the X-ray after the completion of plaintiff's case, and the confused situation which developed during summations as a result of the agreement of counsel settling plaintiff's motion to strike, warranted the finding that plaintiff's case was seriously prejudiced. The trial judge's conclusion deserves deference because he had the opportunity to hear the witnesses and to assess their credibility, and was in the best position to evaluate the effect of the X-ray dispute, plaintiff's summation and the court's instruction on the jury. Dolson v. Anastasia, 55 N.J. 2, 7 (1969). Such deference is especially appropriate where, *177 as here, the trial judge grants a new trial because of his own error. Rossetti v. Public Service Coord. Transport, 53 N.J. Super. 293, 299 (App. Div. 1958). There was no manifest denial or miscarriage of justice in granting the new trial, and hence the trial judge's conclusion should stand undisturbed. Dolson v. Anastasia, supra, 55 N.J. at 6-8; Kulbacki v. Sobchinsky, 38 N.J. 435, 459 (1962) (Weintraub, C.J., dissenting); R. 2:10-1.
We next turn to plaintiff's appeal. When the case was retried before the second trial judge, plaintiff informed the court that he would seek to introduce into evidence the transcribed testimony of the expert witness who testified on his behalf at the first trial, rather than have him appear in person. Counsel for plaintiff represented to the judge that the expert witness was now "totally retired" and was not seeing patients at all. Counsel explained that he had spoken by telephone with the witness, who lives in Hollywood, Florida, and had learned that his health, particularly his heart condition, had worsened appreciably since the first trial in 1975. Noting that at the time of the first trial the witness had traveled to New York City monthly on business, counsel stated that the witness had not made such trips during the nine months prior to the second trial. Counsel reported to the judge that the witness now came north only for treatment at a Boston clinic and appointments with his personal cardiologist in New York, and that the physician had told the witness to avoid tense situations. Counsel indicated to the judge that, while the witness felt that he was under a "moral obligation" to testify, he would do so only for a fee of $1,400 plus his expenses. Counsel stated that plaintiff had been forced to borrow funds from relatives to pay the witness' fee during the first trial, and that plaintiff was unable to obtain the funds required by the witness for the second trial.
Although the trial judge noted that the witness was technically beyond the jurisdiction of the New Jersey courts, he viewed plaintiff's application as directed toward the discretion *178 of the court. The judge concluded that defendant's interest in having the jury observe the appearance and demeanor of plaintiff's expert witness outweighed any hardship on plaintiff resulting from his inability to pay the required fees, and ruled that the transcribed testimony from the first trial was inadmissible.
Faced with the inability to present the crucial expert testimony at the second trial, plaintiff's counsel stipulated the facts that he would produce rather than go through the motions of a second trial. Because plaintiff was unable to introduce any expert testimony showing that defendant had deviated from accepted standards of dental practice, the judge found no cause of action and dismissed plaintiff's suit.
Although the preferable practice would have been for plaintiff to introduce sworn affidavits describing the facts forming the basis for his request, we note that defendant did not dispute the truth of plaintiff's attorney's representations, and the judge accepted them as valid. For the purposes of deciding the legal issue presented by this appeal, we will consider the representations on the same basis as did the trial judge.
On the merits, we note that under Evid. R. 63(3)(a) (ii) prior testimony is admissible to prove the truth of statements therein in a subsequent proceeding without violating the hearsay rule, if the witness who originally gave the testimony is unavailable and if the testimony goes to an issue on which the adverse party in the prior proceeding had the right and opportunity to cross-examine the now unavailable witness with an interest and motive similar to his interest and motive in the proceeding in which the testimony is offered. In this case the issues to which plaintiff's expert's prior testimony were directed in the first trial would be identical to the relevant issues in the second trial. Further, defendant had an adequate opportunity to cross-examine plaintiff's expert with the same interest as he would have during the second trial.
*179 "Unavailability," as defined in Evid. R. 62 (6), requires, among other things, either that the witness be beyond the jurisdiction of the court's process to compel his appearance, or that the proponent of the prior statement be unable, despite due diligence, to obtain the attendance of the witness. As a resident of Florida, the witness is, of course, beyond the subpoena power of the New Jersey courts. The assumption underlying the trial judge's ruling is that, even if an expert witness is beyond the jurisdiction of the court, the proponent must attempt, with due diligence, to procure his attendance. The judge apparently concluded that plaintiff's inability to pay an expert's fee is, by itself, a lack of due diligence.
We find no support for the trial judge's interpretation of the rule in its express terms. According to the language of the rule, the inability of a court to compel attendance and the presence or absence of "due diligence" are separate considerations. Use of the preposition "or" means that these two definitions of unavailability are disjunctive. See 5 Wigmore, Evidence (Chadbourn rev. 1974), § 1404. We conclude that the fact that the expert witness could have been made available by plaintiff's payment of the $1,400 fee is irrelevant to the fulfillment of the unable-to-compel-attendance definition of the rule. Cf. Caramico v. Ferrigno, 83 N.J. Super. 426 (App. Div. 1964) (deposition testimony held improperly admitted where proponent of an allegedly unavailable witness had reason to believe he was within the jurisdiction, and made no attempt to locate to serve him until the day before the trial). But see, Carter-Wallace, Inc. v. Otte, 474 F.2d 529 (2d Cir.1972), cert. den. 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973).
The judgment granting the new trial is affirmed and the judgment in favor of defendant at the second trial is reversed and the matter remanded for new trial.