560 A.2d 59

**Florence A. MYERS, et vir**

v.

**The ESTATE OF Edward J. ALESSI.**

**No. 1705 Sept. Term, 1988.**

Court of Special Appeals of Maryland.

July 5, 1989.

Certiorari Denied Nov. 27, 1989.

126

Laurence A. Marder (Stuart M. Salsbury and Israelson, Salsbury, Clements &.Bekman, on the brief), Baltimore, for appellants.

E. Dale Adkins, III (Wendy L. Shiff and Anderson, Coe & King, on the brief) Baltimore, for appellee.

Argued before ALPERT, WENNER and FISCHER, JJ.

ALPERT, Judge.

A medical malpractice action was brought by Florence A. Myers and her husband, appellants, against Edward J. Alessi, M.D., appellee.[1] Having lost before the Health Claims Arbitration Board, appellants filed a timely appeal in the Circuit Court for Baltimore City. After a trial in that court, the jury returned a verdict on behalf of appellee. Appellants have filed an appeal from the judgment in which they present the following questions:

---

1. Dr. Alessi died prior to trial, Helen Alessi, his wife, was substituted as his personal representative. We will refer to the appellee as either Dr. Alessi or appellee.

1. Whether the trial court's instruction on the issue of contributory negligence was erroneous because it: (a) failed to instruct the jury that a Plaintiff must have an appreciation of the risks inherent in her conduct in order to be contributorily negligent, and (b) failed to instruct the jury that following a doctor's instructions or relying on his advice does not constitute contributory negligence unless the patient has reason to believe that the doctor's negligence caused her injury.

2. Whether the trial court erred when it failed to provide an instruction on the theory of last clear chance.

3. Whether the trial court erred when it failed to permit the introduction of the Health Claims Arbitration hearing testimony of Dr. Robert Younkin since Dr. Younkin was unavailable for trial.

4. Whether the trial court erred when it permitted the introduction of Dr. Leland Stevens' deposition since the appellee failed to demonstrate Dr. Stevens' absence from the jurisdiction and unavailability for trial.

## Facts

Mrs. Myers was diagnosed on December 3, 1983 as having cancer at the base of her tongue. Subsequently, she underwent surgery to remove her tongue and larynx due to the cancer. She was also required to undergo extensive radiation therapy, and was later required to undergo various other surgeries, all due to the cancer. In appellants' complaint against Dr. Alessi, they alleged that he breached the standard of care of a general practitioner by failing to diagnose the cancer at the base of Mrs. Myers' tongue.

Dr. Alessi had been Mrs. Myers' family doctor since 1973. On October 7, 1982 Mrs. Myers went to see Dr. Alessi due to an illness. At that time she was 43 years old and smoked one pack of cigarettes a day. She testified that she went to see Dr. Alessi on October 7, 1982, primarily for a sore throat. Dr. Alessi's office records reflect that she came to his office, complaining that she ached all over, had diarrhea for 36 hours three or four days before, and had missed

work for four days. He noted that his examination revealed that a piece of tonsillar tissue (a "tag") in her throat was slightly inflamed. He prescribed an antibiotic for her.

She returned to his office four days later on October 11, 1982. According to Dr. Alessi's records, she had no diarrhea or fever and was not vomiting, but she still had some nausea, ear pain, headaches, and a mild sore throat. He also noted that the tonsillar inflammation had improved. According to Dr. Alessi, he told Mrs. Myers to return if there was no further improvement or if she had any trouble. Mrs. Myers denied that he told her this. She testified that he told her she could expect to have some throat pain or discomfort because a piece of her tonsil was growing back, but that it was not serious. Dr. Alessi denied making such a statement to her.

Several months later, on May 9, 1983, Mrs. Myers returned to see Dr. Alessi, complaining that she was suffering from a sore throat for the past several weeks, had pain in both ears and had occasional headaches. He diagnosed her condition as "mild otitis media bilaterial," and prescribed medication for her. He testified that he told her to return in 5 to 7 days whether she was better or not, but she said she would not return if she was better. Mrs. Myers at first claimed that there was no discussion about a return visit, but on cross-examination, she admitted that she did have a discussion and that he told her to return if her throat was no better. She never returned.

Mrs. Myers testified that from May to November 1983 her sore throat symptoms never completely abated, but they also never worsened. In November, 1983 she experienced trouble swallowing and contacted Dr. Leland Stevens, whom she had seen before, because she was unable to reach Dr. Alessi. Dr. Stevens told her she had "spurs" and gave her a prescription. She testified that her throat improved somewhat, but on December 3, 1983 she began bleeding from the mouth and was taken to St. Joseph Hospital, where she was diagnosed as having cancer at the base of her tongue.

Mrs. Myers presented three expert witnesses at trial who testified that Dr. Alessi breached the applicable standard of care for a general practitioner by failing to conduct an examination of her throat by a mirror and of her tongue by palpation. Each testified that Dr. Alessi should have diagnosed her cancer. In addition, one of Mrs. Myers' experts testified that Dr. Alessi breached the standard of care by failing to contact Mrs. Myers after she failed to show up for a follow-up visit. Dr. Alessi, on the other hand, presented three expert witnesses who testified that the standard of care under the circumstances did not require an examination of her throat by a mirror or her tongue by palpation. Each testified that a diagnosis of base of tongue cancer was not indicated under the circumstances. They further testified that it is the patient's responsibility to return to a physician if they do not get better.

Mrs. Myers requested that the transcript of the testimony that a Dr. Robert Younkin gave at the arbitration hearing be read to the jury. Dr. Younkin is a specialist in family practice and resides in the State of Washington. His opinions were the same as the other experts who testified for her at trial regarding the applicable standard of care. Appellee objected to the reading of Dr. Younkin's testimony on the grounds that Dr. Younkin's absence was procured by the appellants and that appellee needed to cross-examine Dr. Younkin on new information provided by Dr. Alessi and Mrs. Myers that was unknown to Dr. Younkin at the time he testified. After considering the objection, the trial court excluded the transcript.

The trial court did allow the arbitration testimony of one of appellee's witnesses to be read to the jury. The trial judge found that Dr. Stevens was unavailable and that appellee had exercised reasonable diligence in attempting to obtain his presence at trial.

## 1. JURY INSTRUCTIONS

■ A litigant is entitled to have his or her theory of the case presented to the jury if that theory is a correct

exposition of the law and if there is evidence in the case that supports the theory. *The Sergeant Co. v. Pickett*, 285 Md. 186, 401 A.2d 651 (1979), *quoting Levine v. Rendler*, 272 Md. 1, 13, 320 A.2d 258 (1974); *Zeller v. Greater Baltimore Medical Center*, 67 Md.App. 75, 80, 506 A.2d 646 (1986). In advancement of that proposition, Rule 2–520(c) provides:

> "How Given.—The court may instruct the jury, orally or in writing or both, by granting requested instructions, by giving instruction of its own, or by combining any of these methods. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."

Against this background, we will discuss each of appellant's requested instructions and the propriety of the court's denial of those requests.

### a. *Contributory Negligence*

Appellant contends that the court erred in refusing to grant his request for additional instruction to the jury regarding contributory negligence.[2] By contrast, appellee argues that the court properly instructed the jury on the issue of contributory negligence.

---

**2.** Appellant requested the following instruction be read to the jury:
> Ladies and gentlemen of the jury, the law of Maryland is that in medical malpractice suits, a Defendant who alleges contributory negligence on behalf of the Plaintiff, has the burden of establishing that the Plaintiff 1) actually was aware or should have been aware of the risks and the treatments and 2) failed to exercise ordinary and reasonable care for his or her own safety by doing or failing to do something a person of reasonable prudence would do under the circumstances; however, following the physician's instructions or failing to consult other doctors is not contributory negligence where the patient has no reason to suspect his physician's treatments were the cause of his injury and he or she can rely on the physician's knowledge and skill.

We note that the instruction submitted to the court and the one appellants cite in their brief are not the same. The instruction above states that "... that the Plaintiff 1) actually was aware or should have been aware of the risks of treatment," whereas the instruction quoted

■ To determine the propriety of denying a requested jury instruction, a reviewing court must examine whether the requested instruction was fairly covered by the instructions actually given, and that the requested instruction is a correct statement of the law based on the evidence presented. It is firmly established that under Maryland Rule 2–520(c) a trial judge is not obliged to give a requested instruction if the matter is fairly covered in the instructions actually given. *See State Roads Comm'n v. Parker,* 275 Md. 651, 688, 344 A.2d 109 (1975); *Aronstamn v. Coffey,* 259 Md. 47, 50–51, 267 A.2d 741 (1970); *Peterson v. Goodyear Tire and Rubber Co.,* 254 Md. 137, 144, 254 A.2d 198 (1969); *State ex rel. Dearstone,* 225 Md. 355, 370, 170 A.2d 758 (1961); *Rhone v. Fisher,* 224 Md. 223, 233, 167 A.2d 773 (1961); *Nash v. Raneri,* 77 Md.App. 402, 411, 550 A.2d 717 (1988); and *Zeller, supra,* 67 Md.App. at 83, 87, 506 A.2d 646.

■ Appellant contends that she was entitled to an instruction that in order for her to be found contributorily negligent, she must have actually been aware of or should have been aware of the risk and the treatments. She argues that because she was not aware that she had developed cancer at the base of her tongue, she did not know the risks that her failure to return to the doctor entailed and, therefore, cannot be charged with contributory negligence. Such an instruction would have removed the issue of contributory negligence from the jury and, furthermore, is not the law.

■ In order for a plaintiff to be found contributorily negligent, his or her conduct must either be such (1) that he or she intentionally and unreasonably exposes himself or herself to danger created by the defendant's negligence, of

in the brief states "... a plaintiff must have an appreciation of the risks inherent in her conduct in order to be contributorily negligent." To the extent that the two instructions differ, we will address the correctness of denying the instruction submitted to the trial court only. *See* Md.Rule 8–131.

which danger the plaintiff knows or has reason to know, or (2) that his or her conduct falls short of the standard to which the reasonable man should conform in order to protect himself from harm. *See Restatement (Second) of Torts* § 466 (1965); *Menish v. Polinger*, 277 Md. 553, 562, 356 A.2d 233 (1976).

In this case there was no evidence that Mrs. Myers intentionally exposed herself to base of tongue cancer. *Restatement (Second) of Torts*, § 466(a). Rather, the evidence presented established that she failed to return to Dr. Alessi more than once, although her sore throat persisted for 14 months. *Id.*, § 466(b). The jury was asked to decide whether an ordinary person in the position of Ms. Myers would have returned to the doctor's office under similar circumstances, *i.e.*, whether she was negligent in failing to return. The instruction the trial court gave the jury [3] fairly and adequately stated the law based on the facts presented.

Appellant further argues that the trial court should have instructed the jury that "following the physician's instruc-

---

**3.** On the issue of contributory negligence, the court instructed the jury:

> If it is the Defendant who says the Plaintiff was negligent, the burden of proof is upon the Defendant to prove the claim that the Plaintiff was negligent.
>
> In both cases, it is by a preponderance of the evidence, which I have just explained to you.
>
> Now, we had spoken of negligence. Negligence is doing something that a person using ordinary care would not do or not doing something that a person using ordinary care would do.
>
> Ordinary care is that caution, attention or skill a reasonable person would use in similar circumstances. I have talked about negligence of the Plaintiff and negligence of the Defendant and I have touched on it briefly but it is important. It is important.
>
> In order for one to recover for negligence, that negligence must be a cause of the injury; and in order for a Plaintiff's negligence to bar recovery, the Plaintiff's negligence must be a cause of the injury.
>
> So what you need, you need not only negligence but you need negligence, causation, and then some injury in order for the Plaintiff to recover, to recover, and in order for the Plaintiff to be barred by her own negligence, it must be shown that she was negligent and that that negligence was a cause of her injury.

\* \* \* \* \* \*

tions or failing to consult other doctors is not contributory negligence where the patient has no reason to suspect his physician's treatments were the cause of his injury and he or she can rely on the physician's knowledge and skill." The evidence presented in this case, however, did not warrant such an instruction.

■ The basis of appellant's claim is that Dr. Alessi "instructed" her that she could expect to have problems as a result of [her tonsillar tag] on an intermittent and ongoing basis" and, therefore, she did not return despite a persistent sore throat. Mrs. Myers' testimony at the arbitration hearing concerning Dr. Alessi's comments was admitted into evidence and revealed that Dr. Alessi did not tell her that she could expect sore throats because of the tonsillar tissue. Rather, she said "I know tonsils can cause sore throats." At the trial, she stated that Dr. Alessi did not tell her to expect future sore throats from the tonsillar tag but that he told her that it was "possible." She further testified at trial that Dr. Alessi did *not* instruct her to ignore future sore throats, and that she should not come back to see him.[4] Thus, the evidence presented did not support a finding that Dr. Alessi's comments to her constituted an "instruction" and, therefore, the requested jury instruction was properly refused.

b. *Last Clear Chance*

Appellant also asserts that the court erred by failing to instruct the jury on the doctrine of the last clear chance. Appellant sought an instruction which provided in part:

> Let me go back. Negligence is doing something that a person using ordinary care would not do or not doing something that a person using ordinary care would do.
> Ordinary care is that caution, attention or skill a reasonable person would use under similar circumstances.

**4.** Dr. Alessi testified that he never told her to expect sore throats from the tonsil, and that he told her if she had any trouble to come back at any time at all.

you may still find for the plaintiff (even if you find she was contributorily negligent) if you should conclude that the defendant has a fresh opportunity of which he was aware to avoid injury to the plaintiff and failed to act.

In support of her claim of error, appellant avers that Dr. Alessi had a fresh or new opportunity on May 9, 1983 to perform the appropriate examination or refer her to another physician, which he failed to do, or alternatively that he had a fresh opportunity to avoid the harm by contacting her once he realized she failed to return, which he failed to do.

 The predicate for the proposed instruction is that the evidence establishes that Dr. Alessi was afforded a new or fresh opportunity to avert the consequences of his original negligence and Mrs. Myers' contributory negligence, of which he failed to avail himself. *See MacKenzie v. Reesey,* 235 Md. 381, 201 A.2d 848 (1964); *Ritter v. Portera,* 59 Md.App. 65, 474 A.2d 556 (1984); *Cohen v. Rubin,* 55 Md.App. 83, 460 A.2d 1046 (1983); *Johnson v. Dortch,* 27 Md.App. 605, 342 A.2d 326 *cert. denied,* 276 Md. 745 (1975). The doctor's act of primary negligence may not be used again to serve as the last clear chance of avoiding injuries. *Benton v. Henry,* 241 Md. 32, 35, 215 A.2d 226 (1965). In addition, the fresh negligent act must come at a time when the defendant can, but the plaintiff cannot, avoid the accident. *Johnson, supra,* 27 Md.App. at 614, 342 A.2d 326.

 Neither element is present in this case. First of all, Dr. Alessi is alleged to be guilty of the same negligence in failing to realize in October, 1982 and May, 1983 that the patient needed further examination of her throat and tongue. The May visit did not represent a new situation in which the doctor, aware of danger to Mrs. Myers, negligently failed to avoid it. Secondly, Mrs. Myers was never in a position where she could not have avoided the injury for which she sued. Her failure to return to him for further treatment as instructed constituted contributory negligence "preventing recovery for injurious consequences from such failure." *See Chudson v. Ratra,* 76 Md.App. 753, 773, 548

A.2d 172 (1983). At any time, she could have returned to Dr. Alessi for her persistent sore throat.[5] Consequently, the trial court correctly refused to instruct the jury on the doctrine of last clear chance because it did not apply to the facts of this case.[6]

## 2. PREVIOUSLY TRANSCRIBED TESTIMONY

Appellant next argues that the trial court committed reversible error in two of its evidentiary rulings regarding two transcripts of testimony. Each transcript was from the prior arbitration hearing. The first involved the testimony of Dr. Robert Younkin, an expert selected by appellant to render an opinion regarding the standard of care. The second transcript was the testimony of Dr. Leland Stevens, a factual witness called by the appellee to testify about a visit appellant made to him in November of 1983. The trial court found that appellant had "procured" the unavailability of Dr. Younkin within the context of Md.Rule 2–419(a)(3)(B) and, therefore, ruled that the transcript of his testimony was inadmissible. On the other hand, the trial court found that although Dr. Stevens was similarly out-of-state and

---

**5.** Mrs. Myers, responding to a question on cross-examination asking whether she thought Dr. Alessi never wanted to see her again after her visit of May 9th, stated, "No, I believed he expected to see me the next time I called and asked for an appointment." (E.70).

**6.** Appellant, relying on section 480 of the Restatement (Second) of Torts, contends that the doctrine of last clear chance is still applicable even when a plaintiff is able to escape injury when the defendant
 (a) knows of the plaintiff's situation, and
 (b) realizes or has reason to realize that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and
 (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.
In the case *sub judice,* however, there was no evidence that the defendant, Dr. Alessi, knew "of his plaintiff's situation." Mrs. Myers states that Dr. Alessi testified that he advised her on May 9, 1983, to return in five to seven days and therefore knew about her condition. He further testified, however, that she responded that if she was all right, she would not come back. When she failed to return, Dr. Alessi could have justifiably assumed that her condition had improved.

unavailable, appellee had used reasonable diligence in attempting to have him present at trial and, consequently, allowed his transcript to be read into evidence.

a. *Dr. Younkin*

Appellants argue that because Dr. Younkin, a resident of Washington State, was beyond the subpoena power of this state, they are entitled to submit the transcript of his prior testimony. In support of their argument, appellants rely upon *Sacawa v. Polikoff,* 150 N.J.Super. 172, 375 A.2d 279 (A.D.1977), in which the New Jersey Superior Court ruled that an expert is "unavailable" when he is beyond the subpoena power of the state. The fact that the expert witness could be made available by the payment of a fee was held to be irrelevant, and the court ruled that the expert's prior testimony was admissible. *Id.* 375 A.2d at 283. Similarly, appellants argue, in the instant case, that Dr. Younkin's testimony should have been admitted because he resided out-of-state and was, therefore, beyond the subpoena power of this State, and the fact that he could have been made available by the payment of a fee was irrelevant. The appellee, on the other hand, argues that because appellants intentionally chose not to pay Dr. Younkin to testify at trial, they have "procured" his absence, and his testimony was properly excluded. In addition, the appellee contends that because a great deal of additional information, in the form of subsequent testimony by Dr. Alessi and Mrs. Myers, came to light after Dr. Younkin testified, it is critical that appellee be allowed to cross-examine him on these matters at trial.

Recently, the New Jersey Superior Court reviewed its decision in *Sacawa, supra,* and overruled it. In *Thompson v. Merrell Dow Pharmaceuticals, Inc.,* 229 N.J.Super. 230, 551 A.2d 177 (A.D.1988), the court held that "expert witnesses are not unavailable simply because they are not subject to service of process." *Id.* 551 A.2d at 189. The court further stated:

When expert testimony is necessary in the presentation or defense of a cause of action, it is incumbent on each litigant to seek out experts who support their respective contentions. When an expert to support the litigant's position is found, it behooves counsel to consult with the expert witness to review the facts, examine the record and discuss the theory of the claim or a defense of the client. At the same time, it is the responsibility of trial counsel to discuss fees for consultations, review of opposing experts' opinions and voluntary attendance at trial. If the expert is beyond the jurisdiction of the court to compel attendance at trial, it is the responsibility of the party offering the expert to ascertain the willingness and availability of the expert to appear at trial. The proponent of the expert must attempt to arrange a trial date at which the expert can appear. Since the expert is under the control of the offering litigant, due diligence must be used to secure the attendance of the witness at trial.

*Id.* at 189.

The court acknowledged that prior decisions applied this rule only in criminal matters; nevertheless, the New Jersey court ruled that "the right of cross-examination, and the right to have the jury assess the credibility of a witness' demeanor, attitude, responsiveness, evasiveness and other factors, is also important to litigants in a civil case." *Id.* at 190.

The court in *Thompson* found persuasive a case relied upon by appellee namely, *Carter–Wallace, Inc. v. Otte,* 474 F.2d 529 (2d Cir.1972). In *Carter–Wallace* Judge Friendly held that "before former testimony of an expert witness can be used, there should be some showing, not only that the witness is unavailable, but that no other expert of similar qualifications is available or that the unavailable expert has unique testimony to contribute." *Id.* at 536–37. In so reasoning, Judge Friendly noted that opinion witnesses have no knowledge of the facts of the case, are usually voluntarily chosen by one party, and that their presence is privately arranged.

While the Maryland courts have not dealt with this issue specifically, the Court of Appeals in *Bartell v. Bartell,* 278 Md. 12, 357 A.2d 343 (1976), addressed a similar issue. In that case, Dr. Bartell, the appellee, decided to remain in Canada and not to appear in Maryland for trial. His attorney requested that his deposition transcript be admitted in lieu of his appearance. The trial court refused to admit the transcript, and the Court of Appeals, in affirming the trial court's ruling, stated that:

> it was critically important that Dr. Bartell personally testify before the court. Since it was he and he alone who was responsible for his absence from the State and from the trial court, the chancellor did not err in excluding the deposition.

*Id.* at 24, 357 A.2d 343.

In the case at bar, appellants alone were responsible for selecting an expert who resided in Washington. They were responsible for the decision not to pay him to attend trial. Instead, they elected to have three other experts express their theory of negligence. There was no testimony that Dr. Younkin would not have appeared had he been paid to do so.[7] Of equal importance, nowhere in appellants' brief or record extract do they dispute appellee's contention that he needed to cross-examine Dr. Younkin about additional facts which came to light subsequent to Dr. Younkin's testimony. As a result, we hold that the trial court did not err in excluding Dr. Younkin's transcript.

Even if we had determined that the trial court erred in excluding Dr. Younkin's transcript, the error was

---

7. *Cf. Shives v. Furst,* 70 Md.App. 328, 335, 521 A.2d 332 (1987) (where both parties agreed that Dr. Saks, a resident of Iowa City, Iowa, was "unavailable" at the time of trial because unexpected obligations in his medical practice prevented him from testifying personally before the jury). We note that since January 1, 1981 the Maryland Rules of Procedure have permitted a videotape deposition of an expert witness to be used at trial whether or not the expert is available to testify, provided notice of that use is given to the other party. *See* Md.Rule 2–419(a)(4). No such notice had been made by the appellant here.

not prejudicial. As noted by the Court of Appeals in *Harris v. Harris*, 310 Md. 310, 319, 529 A.2d 356 (1987), "to justify reversal two things are essential. There must be error and there must be injury; and unless it is perceived that the error causes the injury there can be no reversal merely because there is error." (*quoting Joseph Bros. Co. v. Schonthal*, 99 Md. 382, 400, 58 A. 205 (1904)). The burden of demonstrating both error and prejudice is on the complaining party. *Beahm v. Shortall*, 279 Md. 321, 330, 368 A.2d 1005 (1977). Here, the substance of Dr. Younkin's testimony had been echoed by three other expert witnesses, each of whom testified that he was familiar with the standard of care for a general or family practitioner. Thus, Dr. Younkin's testimony would have been merely cumulative evidence presented to the jury. The exclusion of his testimony, therefore, would not be grounds for reversal. *See Hutchison v. Balto. Gas & Elec. Co.*, 241 Md. 329, 333–34, 216 A.2d 573 (1966); *State Roads Comm'n v. Kuenne*, 240 Md. 232, 235, 213 A.2d 567 (1965).

b. *Dr. Stevens' Testimony*

 Finally, appellants contend that the trial court erroneously permitted the introduction of Dr. Stevens' testimony. Appellants claim that the appellee failed to demonstrate that Dr. Stevens was out of this court's jurisdiction and unavailable at the time of trial. Appellants' counsel told the trial court on Friday, June 10, 1988, that his understanding was that Dr. Stevens was still residing in Maryland. Appellee's counsel testified that it was his understanding, based on his secretary's conversation with Dr. Stevens, that he was now residing in Delaware. Over the course of the next three-day period, a process server visited Dr. Stevens' apartment and office in Baltimore five times with no success. On Monday, June 13, 1988, a proffer, accepted by appellants at trial, was made that the appellee's counsel attempted to contact Dr. Stevens by phone at his Baltimore office and home in late April. Receiving no response, appellee wrote to Dr. Stevens. He

responded to this letter in mid-May, stating that he had retired, was living in Delaware and would be there for the next five to six months. Further, he indicated that he did not wish to return to Maryland to testify.

The trial court found that there was no dispute that the witness was out of state, and further found that under the circumstances due diligence had been exercised by the appellee to attempt to have him appear at trial. We agree.[8] Appellee's counsel was specifically told by the witness that he was in Delaware and would be there for five to six months. Further, when it was suggested that Dr. Stevens might still reside in Maryland, appellee attempted to have him served, but the process server's five separate attempts were unsuccessful. Under these circumstances, we hold that the trial court properly admitted the prior testimony of Dr. Stevens.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.

---

8. Contrary to appellants' assertions, this is not a case where counsel assumed a witness was out of state, or knew a witness was scheduled to return and issued no subpoena. *Cf., Lindsay v. State,* 2 Md.App. 330, 234 A.2d 479 (1967); *Gold Kist, Inc. v. Citizens & Southern Nat'l Bank,* 286 S.C. 272, 333 S.E.2d 67 (1985).